We will next hear Morales v. Herrera, number 17-2186. Council, you may proceed. May it please the court. My name is David Lutes. I represent the appellant, Annette Morales. This case is also a 42 U.S.C. 1983 case that was decided on summary judgment in favor of the defendants and the appellees. This case involved an underlying criminal prosecution for fraud and embezzlement on a professional services contract entered into between my client, Ms. Morales, and the City of Sunland Park, New Mexico. On appeal, the appellant asserts two primary arguments. The first argument is that the district court made a legal error as to what the standard of review was in terms of applying arguable probable cause in the circumstances of the argument being made by appellant. More specifically, that the underlying officer in this case falsified information in the arrest affidavit to secure the arrest warrant and arrest for fraud. The district court only decided the fraud issue because that was dispositive. The district court did not rule on the embezzlement issue. The alternative argument that appellant makes is that even assuming the district court's legal framework was correct, that the district court improperly applied that framework to find that a hypothetical reasonable officer could support an allegation for criminal fraud in the context of this case. In looking first at the legal question that appellant put most of the emphasis on, in looking at the briefs and the district court's opinion, kind of preparing for this, there's one point that I would assert where it really became clear that the district court was going astray. That's found on the bottom of page 10 and the top of page 11 of the opinion, which is appendix 330 going over to appendix 331. At that point, the district court is citing the Taylor opinion because appellant has made the argument that there are false allegations in this arrest affidavit, so under Taylor, the court has to assess the arrest affidavit by removing those and then determining probable cause at that point, pursuant to Taylor. So the court cites the Taylor standard, starting on the bottom of page 10, talking about it's a Fourth Amendment violation to knowingly or recklessly omit information or to include information that is false and then it's omitted. And then at the top of page 11, the court then assesses the arrest affidavit to determine whether it would still have given rise to, and this is the significant part, puts in brackets arguable probable cause for the warrant. And at that point, the district court has actually changed what this court stated in Taylor. This court stated in Taylor that the question becomes, once the false information is removed, you assess whether probable cause occurs. Adding arguable probable cause as a material change to that standard, because when qualified immunity is assessed, it's a two-part inquiry. First is, was there a violation of the constitutional right? And an arrest without probable cause is a violation of the constitutional right. Do you disagree with the exclusions that the district court did when the district court struck certain provisions from the affidavit? I mean, I don't think that you complained that the striking was inadequate. I mean, you were generally satisfied the way the affidavit looked after the striking occurred. Is that right? Correct. The district court essentially applied Taylor in a way that an appellant wanted to. So now you're just, I don't mean just, but your argument really is the word probable. Well, it's with the word arguable. Arguable, yeah. Correct. Arguable probable cause. Related question. Is there anywhere in the record we can find a version of the affidavit that was modified for purposes of Taylor? No, I don't believe so, Your Honor. I don't believe the court prepared an affidavit that took out that information. I believe the only affidavit is the affidavit that was presented to the underlying manager. But we do have the court's order that listed specific numbers of paragraphs that the court thought were improper. That's correct. So we could take the old affidavit and we could then just realize or cross out those paragraphs that the court said was going to delete. Right. It's paragraphs 4, 5, 18, 28, 29 and 30 was what the district court cited. And again, that's Appendix 331. So if we get back into then the issue that now this narrowing it down, the word the court said arguable probable cause, you know, in that ruling, the court certainly used arguable probable cause several times. But one time the court didn't. One time on page, well, 13 of the court's order, the court said in this context, the discrepancy between the expenditures reported by the plaintiff and the billed amounts would lead a reasonable officer to believe that there was probable cause to arrest plaintiff for fraudulently billing the city. That was an explicit conclusion and finding by the court. Now, admittedly, the court used arguable in other times, but do those really become important when we have an explicit finding that the court said that that as modified, there was a reasonable officer would have concluded there was probable cause. Didn't that cure any problem with earlier misstatements? No, I don't believe so, Your Honor. And part of that has to do with the citations that were stated directly after that statement on page 13, appendix 333. The court cites Lassiter versus Carver and then quotes in the parenthetical stating that arguable probable cause is another way of saying that the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. So I believe that – I don't believe the court can really say that the district court at that point was making a affirmative determination of probable cause based on the citation. The district court still at that point was in the realm of arguable probable cause, which in the context of falsified information of an arrest affidavit shouldn't be involved, because if an arrest affidavit has falsified information, that if it's removed, then eliminates probable cause, at that point a clearly established right has been violated. So I think that reference – Counsel, isn't the arguable probable cause phrase used in the context of the second step in qualified immunity analysis? That is the clearly established law. And why couldn't the district court's decision here be affirmed on the alternative ground, that arguable probable cause shows that there was no violation of clearly established law?  Arguable probable cause does relate to the question of whether a clearly established right exists. And what arguable probable cause is, is the idea that there's latitude for reasonable but mistaken judgments by an officer. So in the case, the court would have to find that it was not a clearly established right, but that the officer still acted reasonably, such that there was arguable probable cause, even though there really wasn't probable cause. So in that context, that would be when there was a proper application. The problem with doing that in this specific case is the allegations of the plaintiff appellant, Ms. Morales, are that a violation of a clearly established right had occurred. In other words, there's no room at that point to decide whether arguable probable cause can save the defendants, because a clearly established right didn't exist. Because it's been clearly established for decades under the case law of this circuit that providing false information in an affidavit to support probable cause when it otherwise doesn't exist is a violation of a clearly established right. So if the district court agrees with appellant that Taylor should be applied and that aspects of this affidavit should be removed, and if at that point there's no probable cause to arrest, and there's very little in the arrest affidavit that relates to the fraud claim itself. There's really only about three or four paragraphs. Most of it relates to the embezzlement. If you take out the paragraphs where Officer Herrera in this case is saying, she didn't provide me information, so I believe there was a fraud because she billed for work she didn't do. If you take those out because, in fact, she had provided that to Officer Herrera, then at that point a clearly established right has been violated. So arguable probable cause can never save an officer at that point, because at that point it's a violation of a clearly established right. Once the paragraphs are removed as per Taylor, don't we still have in the remaining material the disparity between the expenses and the billing, and don't we still have the use of funds to pay for personal items, and don't we still have the absence of the 3.5 multiplier in the record as far as the city and the investigators are concerned? Why isn't that all still there? Well, to the extent that's still there, because much of that relates to the embezzlement portion of it, but to the extent that's still there, Ms. Morales has never made an affirmative representation that she was going to bill a different way. As the district court noted on page 12 of its opinion, there's no mention of a fee, no mention of a profit, no mention of a markup. There's also no mention of the 3.5 multiplier. Right. One way or the other. I'd like to hear your answer to that. Yeah. Where's the evidence that the city was made aware that she was going to multiply by 3.5? Well, she presented it. It's not in the contract, is it? Well, counsel, it's not in the contract, is it? Yes or no? It's not in the contract either way. Is it in the contract or is it not in the contract? It's not in the contract. All right. And is there any evidence that she presented that method of billing to the city before she billed them? The evidence that she stated was that that was included in her budget. It's not explicit that she made a representation that I was going to bill through a multiplier or not. And the reason why the point that it's not there either way is, one of the concerns that appellant has is that the district court conflated an idea that, well, maybe a reasonable officer could think she breached the contract, but that's different from criminal fraud. Criminal fraud requires a material misrepresentation. It requires her to say, I was going to bill by this method, and then she turns around and bills by a different method. I'm going to charge my client $200 an hour and I charge my client $400 an hour. And one of the concerns about where the court came down on saying that, well, really just the discrepancy of the billing and maybe a reasonable officer could read the contract that way is, first of all, that's not really the fraud claim that Officer Herrera was presenting. Officer Herrera's fraud claim was she invoiced and said she had these meetings and she was billing for work she didn't do. So in that respect, the district court, by going into this realm of arguable probable cause that really has no place with respect to a falsified affidavit allegation, is starting to argue another case that doesn't exist. If the court has any further questions, I'd be happy to address them. Well, yeah, I do. Why isn't embezzlement on the table as to the arrest warrant? I'm sorry, say that again. Why isn't embezzlement on the table for purposes of the arrest warrant? Well, I believe it's because the court ruled that the fraud claim was enough. It did not address the embezzlement claim. To issue the arrest warrant? Well, I mean in terms of the court's decision that's brought us to the appeal today. Well, no, I understand that. But if the arrest warrant was based on the officers alleging that they had probable cause for both fraud and embezzlement, why are we writing embezzlement out of the picture at that point? Well, the only reason is because that's the way the district court framed it, in terms of whether this court would want to address the embezzlement claim. Well, do you want to address the personal expenses, using the business to pay your personal expenses? Well, sure. I mean, the embezzlement claim is that she basically had a business account where after she was paid by Sunland Park, she started to pay things after she had been paid and Sunland Park had accepted the invoice. She used her business account to pay certain personal expenses of her and overhead not related to the Sunland Park account. Now, it's an S-corporation. An S-corporation is a pass-through entity. That's perfectly legitimate. But second of all... It is? Is that in your brief? It was in the district court because... Is it in your brief? That's all I ask. Is it in your brief? Not to this court because we didn't address it. All right. But it is in the motion at the district court level. And then the second point is, is any business is going to have expenses or things that it's paid for overhead and otherwise that aren't related to the Sunland Park... I'm not talking about overhead. I'm talking about the personal expenses. Right. In terms of personal expenses, that would be perfectly legitimate for an S-corp to do. And that was argued at the district court level. The district court never decided those embezzlement issues. If the court agrees with the appellant, it would be a potential for remand for the district court to assess those issues. Thank you, Your Honor. I'll reserve my 15 seconds for... Thank you. Thank you. Good morning. Christopher Salcedo for Appalese Officers Edetta Rhodes and Lieutenant Gonzales. With the reply brief and with the argument this morning, I think I have a much better understanding of the argument being presented by appellants. And I think it really comes down to this. Did Officer Edetta knowingly or recklessly misrepresent or omit information in his warrant affidavit that was material to a finding of probable cause? And he's arguing that point looking at the second part, which is what Judge Armijo did. We refer to her analysis as a linear analysis. She focused on whether it was material. We also submit she did so to make this an issue that would not be brought on appeal. She took the conservative route, if you will. She did not have to. What she did is she did a Franks analysis, or Taylor is a case that she cites too, but a Franks analysis. Of course, Franks is a suppression case, so you're talking about probable cause. You're talking about in a qualified immunity setting, therefore, it is the constitutional violation section of the analysis. Because you're talking about whether there was probable cause, as you would in a suppression hearing. Now, the term arguable is thrown in there. And that, of course, is raising questions because there is case law not only in this circuit, but I think throughout the nation that uses it as part of a probable cause analysis, but it also uses it as clearly established. Frankly, I think both are appropriate. I think, in fact, at times there is crossover. Because at times, clearly established law determines what a reasonable officer can or should do. However, that is not always the case. It is also used, the term arguable. It is used as a replacement, if you will, for reasonable officer, which, of course, is what probable cause looks to. It does not require that an officer make a decision that is 100% accurate. Instead, they're required to make the best decision they can with the information they have. This court has, in fact, said before that the relevant question with probable cause is whether a substantial probability existed that the suspect committed the crime requiring something more than a bare suspicion. Well, that is what Judge Armijo did once she performed the Franks analysis. So she took away the evidence that was being challenged. And she looked at only three pieces of evidence for the claim of fraud. She looked at the contract and arguably the RFP, although she acknowledges it was not truly before her. She looked at the invoices, and she looked at a spreadsheet that was provided to her by the appellants. The spreadsheet, of course, referenced a multiplier of 3.5. With that information, she noted. I was confused about the 3.5. It was hard for me to see from the assertion of what the bills were, the outpay by Morales, that that was then multiplied by, in fact, multiplied by 3.5. It doesn't seem to me that it correlates really very well. My math also doesn't exactly add or find the multiplier of 3.5. It finds a multiplier from what I can tell based on the expenses. Certain expenses were multiplied and others were not, like taxes were not multiplied. They were not given that multiplier. So you have that expense sheet totaling $203,000, but then you have invoices totaling approximately $400,000. I think it was $50,000 in that general range. So I will agree with you, Your Honor. If you just look at the straight expenses multiplied by 3.5, you do not come up with what they were billed. So I would agree with you there. Could I just ask about the spreadsheet that lists the expenses? Yes, Your Honor. The one that was included with the affidavit or attached to the affidavit has the total you mentioned, the $223,170. And it doesn't have a row for the multiplier. But then later on, I think it was something that Ms. Morales submitted, that same expense sheet added on at the bottom, the multiplier. It left me wondering what the officers knew about the multiplier at the time that they prepared the affidavit and submitted it for approval or for the arrest warrant. I believe I am correct in this statement. I believe Officer Arreta was informed of the multiplier when he met with Ms. Morales. And that would have been, I believe it was April of 2012. And I could check on that very quickly for you. Yes, that is correct. Well, if that's the case, then why wouldn't that explain the discrepancy between what was billed and what was listed as expenses? Why does that raise a red flag of fraud? If they're getting this explanation and later on we understand it was presented as an industry standard, where's the probable cause? The probable cause is that that multiplier was not found anywhere within the contract or the RFP. It certainly wasn't presented as something that the city had agreed to. I understand, but was it explained to the officers before they applied for the arrest warrant? My understanding is they were informed the 3.5 multiplier was, according to Ms. Morales, industry standard. And that that is what she had done. I'm aware of no evidence before this quarter or otherwise that suggests that that 3.5 multiplier was made known to the city before that time. No, I'm not talking about the city. I mean, it's the officers who want to arrest her for fraud. Correct. And she's explained to them that the industry standard is to charge this multiplier, and that explains the discrepancy between the expenses and the billing. Why at that point do they seek the arrest warrant? It seems like if they've got this explanation, is that really enough? I think it is. Of course, the explanation, there is an issue in there, a credibility issue, I guess, if you will, Your Honor. But I think the key to it was the fact, of course, that the fraud is being alleged to have occurred against the city. And it was the city who was not informed of this. So this is information that came during the questioning, during the investigation. And I think it's not a stretch to say it was seen as an excuse after the fact to explain the discrepancy between what was billed to the city and the true expenses for the services that were provided. Well, let me ask you this. Is there anything on that expense list that actually pays her and her staff? I guess there's a payroll expense. There is payroll. But what about her? I mean, she isn't doing this for free. Doesn't she get to charge for the services? My understanding is it is payroll. In fact, when the contractor – Her pay is within that payroll expense line? That is my understanding. Correct, Your Honor. Is there an agreement about what her rate is going to be? I mean, is it a fixed hourly rate like other employees would be? No discussion. There is no information on that. So my concern on all that is, just like Judge Mathison, there's really no discussion about what she will be paid or at what rate or whether she'll get a profit. And to convert this to a criminal charge – I mean, I could see a breach of contract claim very easily. But to convert this to a criminal charge is a pretty big jump. I don't know how much to take into account all the other shenanigans that apparently were going on or at least were alleged with these projects. Because there was apparently a lot of chaos about a whole lot of activities going on by the city. Is there any evidence there that would help reveal why this progressed to a criminal manner? Officer Herrera, throughout the investigation, consulted not only with his sergeant, Felipe Gonzalez, but he also consulted with the district attorney's office. And at that time, in fact, not only did the district attorney's office sign off on the warrant for arrest before the district judge signed off, but they were also involved throughout the investigation. I will agree with Your Honor, it was part of a larger investigation. At the time Ms. Morales was indicted, there were other contractors who were arrested. And in fact, there were city officials, many city officials, who were arrested too, in fact, who eventually pled not to fraud or embezzlement but to other crimes. So why didn't he... I guess I'm struggling to answer your question more directly because the information before us and Judge Armijo's analysis tried to just break down the evidence to its most basic form. Again, a linear analysis is what she tried to do. We submit, of course, she did not have to. It is, of course, the... Well, let me start by saying what has been established, I think, by appellants, is that they're claiming that clearly established law is found in only one area. And I think that's incredibly important. And it goes to a question Your Honor, Judge Matheson asked a few minutes ago. Clearly established is being argued by appellants to relate only to whether there were knowingly or reckless statements made in the affidavit, either by representation or omission. That's it. So going back to the Armijo analysis, when she broke down the three areas of evidence under Franks or under Taylor, there is no argument that there is clearly established law to suggest that in that situation, Officer Armijo should have either done something more, verified certain information, or perhaps discounted certain information. For example, there is no clearly established law that at that time he was required to determine what type of contract we were dealing with, if in fact certain expenses were provided for, if in fact Ms. Morales wasn't paid through another mechanism. That case has not been presented to the court, and I will submit we have looked and I have found nothing even slightly on point. So I think... So didn't the district court rely on step one of qualified immunity analysis for its decision? We really don't have the benefit of the court's analysis of the second prong, the clearly established law prong. Are you arguing that that's what we should be looking at, even though the district court relied on prong one? It's another option, Your Honor. Honestly, I think there are several options for the court. Well, is it an option, though? I mean, has that been fully addressed by the parties for us? Are we in a position to look at that option? Your Honor, you asked the question earlier, so I wanted to make sure we did establish our argument with regard to that. Well, now I'm asking if it's really an option. I think it would be for the court. I think it would be, although I certainly do not think the court has to go there. I think Judge Armijo certainly gave the court an avenue in which to go. As argued in our brief, though, there is even a second, more obvious argument than that, and that would be that the appellants have failed to show that the Frank's analysis or the Taylor analysis is even necessary. The burden to show that there was a knowingly or reckless statement or omission that was within the affidavit is certainly on appellants, and that argument has not been made. That showing has not been made. And that goes to my point again that Judge Armijo took a very conservative approach in doing this, although she did not have to. So the issue of deliverables, the issue of the testimony from the former city attorney, I think were certainly relevant and could have been considered and perhaps should have been considered, and I think that is before the court. When you say conservative, you're saying that by using the word reasonable, she jumped into the qualified immunity analysis and kind of bypassed the first step about whether it was or wasn't illegal? She gave appellants almost the benefit of the doubt without having to decide whether, in fact, there was a showing of illegality. Correct. So what you're saying is that we ought to look at her ruling as a qualified immunity ruling, which of course she thought she was doing, but she simply missed the first step. But you wouldn't say she didn't miss it. She basically just assumed that the plaintiff, she gave the benefit of the doubt to the plaintiff on that and then moved to the second step of whether it was clearly established for qualified immunity. I would say it a little bit different. She found that there wasn't a constitutional violation because, in fact, there was probable cause. Even if statements were wrongfully omitted from the affidavit. And I believe that that was her analysis. So even if. Where does she say that? Could you read that quote for us? It's not a quote, Your Honor, but the fact that she, in fact, goes to a Franks analysis and, again, determines that there was probable cause. Obviously that is the constitutional violation part of the qualified immunity analysis. So what she did not do at any time was go through a discussion and certainly not a finding that there were omissions, wrongful omissions, intentional or reckless. But she found probable cause on the basis of the discrepancy between expenses and billing. Is that? Between the discrepancy? Yes, Your Honor, with one extension of that and the lack of a disclosure of the multiplier. All right. And I take it you agree with Mr. Lutz that the personal expenditures are not really part of the case at this point? I do agree. The judge or me who basically determined that because there was probable cause for an arrest for fraud, the person was arrested and therefore an analysis as well as to whether there was probable cause for an arrest of embezzlement was unnecessary because the arrest already had occurred properly. In other words, because not only because it's a sub S chapter corporation, but just because it could be in any kind of a corporation or an individual that once the billing is made and paid, then there should be no restrictions on the person receiving that money as to how they're going to use the money that they they've obtained if it was billed according to an agreement. Is that your point? That is that it doesn't matter? No, Your Honor. And if I may answer the question, I am passed on time. Judge Armijo did not get into embezzlement. She simply found that because there was an arrest, a proper arrest for fraud, that she did not have to address the embezzlement claim. In other words, she was properly arrested and therefore did not matter whether it was for fraud and embezzlement or fraud or embezzlement. I was limiting it to fraud. For fraud, if you conclude that the money was properly billed and properly paid, then it doesn't matter what the recipient of that money did with the money afterwards. That is assuming that the billings were accurate. And again, I apologize. May I answer the question? I think I have an answer. Thank you, counsel. We're going to give him a couple more minutes. Thank you, Your Honor. I went a little long. Just a couple brief points that were brought up, particularly in the last few minutes. One, the court discussed whether the district court had just ruled under prong number one. And I think I heard Mr. Salcedo say that was his belief of what the court did. If so, then the court improperly brought the concept of arguable probable cause, which really relates to prong two, and applied it in a doctrinally incorrect way as to prong one. Going back to a comment that was made during my opening, there was a question about the reference on page 13 that just said probable cause as opposed to arguable probable cause. If the court looks at the district court's next paragraph, page 14 of 20, appendix 334, the court says, Having found that there was arguable probable cause to arrest plaintiff for fraud, it is unnecessary to examine whether there was probable cause to arrest for embezzlement. I think the district court's opinion is pretty clear that it was arguable probable cause that the district court was ruling upon to dismiss the case, and it was improper to do that under prong one as to whether a constitutional right existed. I think the reference on page 13 was a stray reference where arguable should have been put in. Unless the court has any further questions, those were the main things I wanted to address in rebuttal. Thank you, counsel. Thank you. Appreciate your time. Thank you to both of you. The case will be submitted, and counsel are excused. We'll take our morning break and be back in about ten minutes.